RICE
*vs.*
COMMONWEALTH

---

Case 2.

ORDER UPON A
RULE.

# Rice *vs.* Commonwealth.

APPEAL FROM KENTON CIRCUIT.

The official misconduct of an attorney at law may be inquired into in a summary manner, by the court, upon rule, and if guilty his name may be stricken from the roll of attornies. (*Bacon's Abr. vol.* 1, *title Attorney, p.* 306.) And this incidental power of all courts, unless clearly exceeded or abused, should not be interfered with by this court. But the power is one which should be exercised with great caution and discretion. (*Ex parte Burr,* 9 *Wheaton,* 529; 19 *Howard Rep. page* 9.)

[The facts of the case appear in the opinion of the court.   REP.]

*J. P. Harrison,* for appellant—

This is a case of absolute suspension from the practice of the law, on proceedings under a *rule*, "to 'answer the charge which has come to the knowl-'edge of the court, of making an improper change 'in a writing offered in evidence."

This "writing" was an unauthenticated copy from the letter book of the Kentucky Trust Company Bank—that being an impression of a letter written by the President. The "change" made upon it, was simply the addition of the word "Prest." after the name of the President. The "writing" was offered in evidence by another party—and was in fact received as offered—and that, too, after the "change"

made upon it, had "come to the knowledge of the court."

The appellant claims that the proceedings in this case were irregular, illegal and oppressive; that the judgment is erroneous and unjust. So far from appellant being guilty of malpractice or even "improper" conduct, it is submitted that there is nothing in the evidence, when calmly and impartially considered, but what can be reconciled with the strictest integrity, and the highest sense of professional honor!

The court, in the first place, very properly—if indeed there was anything in it—appointed a committee of the bar to investigate the charge. The appellant sensible of the spotless character, which, as a member of the profession of law, it was his duty to maintain, and desiring a strict and impartial investigation of his conduct and character, assented, as the record shows; to this appointment. But strange to say, the court, in the absence of appellant —after he had assented to the first order, and while he was, as may well be supposed, making arrangements for the investigation—set aside this order upon its own motion, and at the same time issued the rule under which these proceedings were had!

As the record does not show that appellant excepted to the order being set aside, it may not, perhaps, be relied upon as error; but it is submitted that it was unjust and oppressive—that it indicated at the outset unusual and unwarranted severity on the part of the court.

The main questions raised upon the record, and relied upon as sufficient, separately, to justify the reversal of the judgment, are—

1st. The court erred in overruling the motion to set aside the rule for want of affidavit.

2d. In overruling the motion requiring interrogatories to be filed.

3d. In overruling the questions put to Finnell by appellant.

4th. The judgment could only be rendered upon information or indictment, through the intervention of a jury.

5th. The judgment should have been, in effect, confined to the Kenton circuit court.

6th. The answer of appellant fulfilled the requirement of the rule.

7th. The charge is insufficient to sustain the judgment.

8th. The judgment is not sustained by the evidence.

1st. The rule is based upon a charge that had come to the knowledge of the court. The act complained of, therefore, was not committed in its presence. Judicially, the court could have no knowledge of it; and it could not act upon the charge until it was supported by affidavit. (*Ex parte Burr* 9*th Wheaton*, page 529; *Tidd's Pract.* 4*th Am. Ed. vol.* 1*st, p.* 88; *Hawkins P. C.* 2 *vol. p.* 214.)

2d. The rule is uncertain and singular, to say the least. It did not indicate to appellant whether he was to be tried for malpractice, contempt, or some imaginary crime. By dispensing with an information, supported by affidavit, appellant was deprived of his right to meet his accuser face to face, upon a definite charge, and interrogatories were doubly necessary, first to indicate the real nature of the charge, and, second, to give appellant an opportunity to put an end to the proceedings. The practice is to dismiss the case upon the sworn denial of the charges set forth in the interrogatories, when the acts complained of were committed out of the immediate presence of the court. (4*th Black. Com.* 287.)

3d. The questions put to Finnell by appellant, were clearly pertinent: "Do you believe that Mr. Rice intended to do any one any wrong, by making that alteration?"

"Have you not said you did not believe Mr. Rice intended to wrong any one, by making the alteration in question?"

These questions were put to what was really the accuser. He was not required to support the charge by affidavit, or even put it in writing. There would seem to be a reason for this. The charge was first made under excitement—on reflection, he was convinced of its injustice. In his evidence he in fact admits that the legal effect of the letter was the same with or without the word Prest. And now when asked directly, he was not permitted to do full justice to appellant, and say, as he doubtless would have said—else the objections would not have been made—that on reflection, he was satisfied there was no wrong intended. As a man of truth and honor, it was due no less to himself than it was required for the purposes of justice—for without the qualifications, which the answer to these questions would have given, his statements are not entirely reconciled. The witness is really forced into a false position, and gross injustice is done appellant.

4th. This was in fact a criminal proceeding. The rule was issued in the august name of the commonwealth. The prosecutor, with assistant counsel, is appointed by the court to attend to the immense charge. A solemnity and importance is given to the case, second to none in the criminal records of the court. The only difference is, in this case the court appears in the triune character of accuser, jury, and judge. The objection to the judgment is, that it could only be rendered upon complaint, information, or indictment, after a jury had found the facts charged. (*Fisher's case*, 6 *Leigh Rep. p.* 626; 1*st Statute Law of Kentucky, page* 172.)

This statute is still in force, (*Rev. Stat. p.* 127, *sec.* 5; *Constitution, p.* 69, *sec.* 8.) This statute provides that if the general court detect any malpractice in a counsel, or if a *complaint in writing* be made, the party accused shall be summoned *to show cause why an information should not be filed against him*—and if such information be ordered, and *he be found guilty* of the

RICE
*vs.*
COMMONWEALTH

matter therein charged, the court may either suspend his license or vacate it altogether.

The general court was abolished in 1851; but by section 7th of the same act, the jurisdiction of that court to hear "any suit, action, or motion, in the name of the commonwealth," is vested in the Franklin circuit court.

This statute governs the present case—and as it is one of those cases in the name of the commonwealth, in which the general court had special jurisdiction— the Franklin circuit court, and not the Kenton circuit, has jurisdiction of it.

5th. The judgment of the court is, not to strike appellant's name from the roll of attornies *practicing* at this bar—which would be in fact the same as annulling his license—but the language is more general, and stronger—to strike his name from the roll of attornies *"admitted to the practice of the law at this bar."* That is, appellant having been admitted to the practice at this bar, he shall no longer be allowed to practice anywhere!

The language of the judgment, as doubtless also the supposed power to disbar, informally, are taken from the Common Law. But attornies are not admitted to practice in Kentucky as they are in England. Here the applicant is first required to obtain from the county court an order certifying to his "honesty, probity, and good demeanor;" and then to be examined by two circuit court judges. It is therefore supremely absurd for one judge to disbar an attorney, when three are required to admit him to practice.

6th. The rule required appellant—not to show cause why he should not be disbarred for making the improper change, but to "answer the charge." He did answer fully, denying that he had made any improper change. The rule was therefore at an end. If it was not absolutely dead, it certainly had not life enough to support the terrible judgment of pro-

fessional annihilation! Such is not the general practice at least. (1 *Tidd's Practice, p.* 88.)

7th. Neither the nature of the "writing" nor the nature of the "change" is indicated in the charge;" and no intention is charged. The term writing indicates that it had no legal character; and the "change" may have been made by accident or mistake.

The power to disbar cannot be exercised without good cause. It is given to the court, or rather it can be exercised by it, only to protect its own dignity. Mere contempts are punishable by fine and imprisonment; and nothing short of malpractice, attended with fraud and corruption, will justify absolute disbarring. (*Bacon's Ab. vol.* 1, *p.* 206; *State vs Chapman,* 11 *Ohio, p.* 433; *Hawkin's P. C.* 2d *vol. p.* 219, *note*; 3d *Thomas Coke, p.* 325, *note.*)

8th. If there is nothing in the charge, when taken as true, to support the judgment, it is fair to presume that it is owing to an absolute want of evidence, for the record indicates throughout no want of disposition on the part of the prosecution to push the matter to extremes, while the witnessses in the case, without an exception, are judges and lawyers. But this is not merely a presumption. When calmly and impartially considered, so far from there being anything even improper in the conduct of appellant, the evidence shows that appellant acted with the strictest fidelity. And instead of injuring any one, or intending to do so, he was in fact the victim throughout.

The truth is, that the letter furnished appellant by Finnell was not a true copy of the original, or of the impression in the letter-book, for all admit that there was something after the president's name in the latter, and from which even the court, at first sight, made the word Prest. Park swears that it was upon the original, and should be upon the copy from the letter-book; and, at his suggestion, the change was in fact made. Finnell himself admits that the legal effect of the letter was the same, with or without the word Prest. It was never denied that the original

letter was written by the president, and regularly entered upon the letter-book. But this is not all, the copy was in fact received as offered, and this, too after the "improper change" had been observed. All this demonstrates the fidelity and entire propriety of appellant's conduct.

How utterly absurd it is to claim that this change was made with even an improper motive. It was made openly in appellant's own hand, and Finnell's attention was at least called to the omission. Finnell himself declined to supply it, not because the original did not authorise it, but because it was unnecessary as the legal effect was the same. And notice was served upon Finnell to produce the very book that would expose the fraud, if fraud existed.

It was a mere "writing," and appellant had the same right to alter it that he had to alter any other unauthenticated paper which he thought required it.

One witness is called to prove the making of the improper change; it is therefore a mere matter of veracity between the witness and appellant. But divers of the bar, including the prosecutor, are called to prove, not that appellant offered the writing in evidence, but that he knew it was being so offered, and was responsible for it. As the rule does not charge appellant with anything of this, the judgment cannot stand upon it, and it is not strictly necessary to reply to it. But this evidence suggests some interesting questions of professional ethics, and their examination will throw some light on the conduct of appellant. If the bench and bar of Covington are eminent for their dignity, propriety, and lofty sense of professional honor, any improper conduct will be less excusable. On the other hand, if appellant was not treated with that courtesy due to him as a member of the profession, he cannot be held so strictly accountable. And if a motive existed, on the part of any of the parties in the case, in which the "writing" was offered in evidence, to dispense with appellant, or take from him the chief management of

the case, these proceedings are accounted for upon a very different theory than that of improper conduct on the part of appellant.

The transcript of the case of *Finnell vs. Sandford, & Co.*, in which the "writing" was offered, was waived by consent of counsel; but it is on record in this court having also come up on appeal, and forms part of the evidence in the present case. By reference to the record in that case, it will be seen—that it involved, directly and indirectly, not less than $200,000,—that appellant had almost wholly attended to the preparation of the case for the defense, the evidence being mainly in depositions,—*and that the copy was in effyct received as offered!*

This copy, at the opening of that case, was shown to Stevenson by appellant, as containing matter material to the issue; at the same time telling him that notice had been served to produce the book itself. Stevenson says: "I had a consultation," not with appellant but "with Mr. Benton, and we determined not to use it." But this is not all. After the evidence was in fact closed, and when Stevenson was arguing his instructions, he saw the importance of this letter. And now, too, without any consultation with appellant, offered it in evidence, or in fact insisted that he had regularly offered it, or that there was an agreement to that effect. Appellant knew, but too well, that it had not been offered; and had he said anything, its effect would have been only to embarrass or delay the attempt Stevenson was now making to get it into the case. Under the circumstances, therefore, it is preposterous to claim that appellant should have interfered, or to hold him responsible for its being offered.

After what he had told Stevenson, he might allow that distinguished gentleman to do or say what he pleased that did not compromise him. Mr. Stevenson says,—"from Mr. Rice's serving notice to produce the letter book, I suppose he expected to use the original," and also that he believed "he did not intend

to use it on the first day of the trial;" and if Stevenson was laboring under a mistake it was his own fault, if there was any blame anywhere. But there is none. The affair was more like a "comedy of errors," in which mistakes and truth play at "bopeep."

Much is said about the appearance and conduct of appellant at the time when this "writing" was offered, when the prosecutor, as well as the whole bar were "profoundly agitated at the painful occurrence." But it will be seen that his conduct was entirely consistent with a sense of entire innocence. There was but one reply that could have been given to the charge of Finnell, and the roughness of Pryor, consistent with appellant's self-respect, or his *idea* of what belonged to the dignity of an impartial court, and that reply could not be given in words, and certainly not in the presence of the court. Pryor's object, however, was not to get an answer, for if the copy was not a true one, all he had to do was to object to it. He first tried to restrain Finnell, who, coming in suddenly and excited, had made the charge of "forgery," not knowing who had offered it. But failing in this, and fearing a conflict with Stevenson, who had in fact offered it, Pryor turns to appellant and "asked *him* sharply why and when he had done this." He was successful. By this adroit movement the storm which was about to break out between them and Stevenson was thus turned upon the head of an innocent spectator. The evidence shows that there was more than one party implicated. There was a double dilemma. *Something* had to be done to relieve the parties and to vindicate the dignity of the court! Can these proceedings be accounted for, or their glaring absurdities reconciled upon any other hypothesis?

Appellant only was unmoved amid the terrible storm. The prosecutor, who "sat by the judge upon the bench, and had his eye upon appellant," says that when the question was raised, appellant called

for the letter book, and pointing to the bottom of the page, exclaimed, with an air of triumph, "what do you call that but 'prest.,' or words to that effect." Here is then the highest evidence of the fact, that appellant at least, believed himself to be right; and he may now well confidently rely upon the final triumph of the truth.

The case is a new and novel one, yet it is not necessary to speak of its immense importance. Its decision involves no less the interests of the bar in Kentucky than those of appellant. It is humbly submitted, with the utmost confidence in the justice and wisdom of this honorable court.

*James Harlan, Attorney General,* for the Commonwealth—

This appeal is prosecuted by Mr. Rice to reverse an order of the Kenton circuit court striking his name from the roll of attorneys admitted to practice in that court.

1. The Code of Practice (*sects.* 15 *and* 16) will decide the question of jurisdiction. *Section* 15 gives this court jurisdiction over the final orders and judgments of all other courts of this Commonwealth, subject to the exceptions in the section which follows. The present case does not come within the exceptions, and I am inclined to the opinion that the court has jurisdiction; in that opinion I may be wrong.

2. Is the case, as made out, sufficient to authorize this court to interfere and reverse the order of the circuit court?

The proof is very satisfactory that Mr. Rice obtained from Mr. Finnell, the agent or commissioner in winding up the affairs of the Kentucky Trust Company Bank, a copy of a letter taken from the letter book of the bank, purporting to have been written by B. F. Sandford, and added the word *"Prest."* or *"President"* at the end of Sandford's name, for the purpose of being used as evidence in a suit then pending in court. The letter, as copied in the letter

book, did not show it was written in the writers official capacity, and in order to give it an *official stamp* Mr. Rice added the word *"President."* For this act the circuit court ordered his name to be stricken from the roll of attorneys of the court. Can this court say the order was not proper? But if doubts existed the order should not be reversed. (*Ex parte Burr*, 9 *Wheaton*, 529; 5 *Cond. Rep.* 660.) In that case, the court decided, that whatever may be its authority, in that respect, the power to interfere will not be exercised unless where the conduct of the court below has been grossly irregular and unjust.

The supreme court of the United States, at its last term, in the case of Secombe, gave a similar decision. (*Sec.* 19 *Howard, page* 9.) In that case the court said: "It has been well settled by the rules and ' practice of common law courts, that it rests exclu-' sively with the court to determine who is qualified ' to become one of its officers, as an attorney and ' counsellor, and for what cause he ought to be re-' moved;" but the power to be exercised by a sound judicial discretion.

And that is the question to be decided by this court. It seems to me there was no abuse of discretion by the circuit court in removing Mr. Rice from the bar. It is necessary as an example to others.

Dec. 8, 1857.    Judge Simpson delivered the opinion of the court.

This was a proceeding against the appellant by rule, requiring him to appear and answer the charge which had come to the knowledge of the court, of making an *improper change* in a writing offered as evidence on a trial in that court.

The first objection made to the proceeding is, that the rule was irregularly issued, upon the knowledge of the court alone, without any affidavits having been filed to sustain the charge.

This objection is founded on a misconception, as well of the power as of the duty of the court. The defendant in the rule was an attorney at law, and an

officer of the court. All courts have the power to control and regulate, to a certain extent, the conduct of their officers, and to inflict on them for their official misconduct, such punishment as the law prescribes. If a court have knowledge of the existence of such official misconduct on the part of any of its officers, it not only has the power, but it is its duty, to institute an appropriate proceeding against the offender, and to bring him, if guilty, to condign punishment. And it is much to be regretted that this duty which the law devolves upon the courts of the country is so title regarded, and that the obligations which it imposes are so frequently overlooked or neglected.

The official misconduct of an attorney at law may be inquired into in a summary manner by the court, and if guilty of such misconduct his name may be stricken from the roll of attorneys admitted to the practice of law at the bar of the court. (*Bacon's Ab. vol.* 1, *title Attorney, page* 306.) Such was the mode of proceeding and the judgment of the court in the present case.

The proof introduced upon the trial of the rule established the fact most conclusively, that the appellant made an alteration in a copy of a letter, with which he had been furnished, by annexing to the name of B. F. Sandford, by whom it purported to have been written, the word "*Prest.*" The evident design of the alteration was to impart to the letter an official character, by making it appear that the author thereof, when he wrote it, was acting in his official capacity of President of the Kentucky Trust Company Bank. The copy of the letter in which this alteration was made had been procured for the purpose of using it, on the trial of a suit then pending in the court below, in which the appellant was acting as counsel for the defendants. The appellant insists that he did not intend to use the copy as evidence on the trial, and that it was offered by another lawyer who was also acting as counsel on the same

Rice
*vs.*
Commonwealth

The official misconduct of an attorney at law may be inquired into in a summary manner, by the court, upon a rule, and if guilty his name may be stricken from the roll of attorneys. (*Bacon's Abr. vol.* 1, *title Attorney, p.* 306.) And this incidental power of all courts, unless clearly exceeded or abused, should not be interfer'd with by this court. But the power is one which should be exercised with great caution and discretion. (*Ex parte Burr,* 9 *Wheaton,* 529; 19 *Howard Rep. page* 9.)

side, without his knowledge or assent. It appears, however, from the evidence, that he brought the copy into court, was present when it was offered by the other counsel, and made no objection to its use, but on the contrary insisted that it was a correct copy from the original. He may, after having made the addition referred to, have concluded not to use the copy of the letter which he had thus altered, but if he did, he certainly acted improperly in exhibiting the writing upon the trial, and in permitting the other counsel to make an effort to use it, without any expression of dissent on his part.

The power to remove an attorney from the bar ought to be exercised with great caution and discretion, but it is a power incidental to all courts, and unless it be clearly exceeded or abused by a circuit court this court should not interpose, as it cannot decide with the same means of information that the court below was in the possession of. (*Ex parte Burr*, 9 *Wheaton*, 529; 19 *Howard*, page 9.)

There was no irregularity in the mode of proceeding, inasmuch as it was instituted by the court on its own knowledge, derived from what actually occurred in its presence. The questions propounded to the witness, which were objected to, were improper because they required him to state merely his belief and opinion, and not any fact, and therefore the objection was properly sustained. The court below did not exceed its powers in rendering the judgment, nor can we say that it decided erroneously upon the testimony. There is therefore no ground for the interposition of this court.

Wherefore, the judgment is affirmed..